IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN HENRY, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO.  11-5505 |
| | : | |
| ACME # 7871 and SUPERVALU | : | |
| Defendants. | : | |

DuBois, J.                                                                                          February 25, 2014

M E M O R A N D U M

I.    INTRODUCTION

Plaintiff, John Henry, filed suit against his former employer, Acme Markets, Inc. ("Acme"), and Acme's parent corporation, Supervalu Inc., under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*[1]  Plaintiff alleges that defendants unlawfully terminated him based upon his age.  Presently before the Court is defendants' Motion for Summary Judgment.  For the reasons that follow, the Court denies defendants' Motion.

II.    BACKGROUND[2]

Plaintiff was born in September 1956 and began working for Acme in 1972.  Defs. Facts ¶¶ 4, 6.  In 1990, at approximately age thirty-four, plaintiff took a position as Store Director at one of Acme's retail grocery stores.  *Id.* ¶ 8.  From 1990 until 1999, plaintiff's job performance met or exceeded expectations.  *Id.* ¶ 17.  District Manager Kornelius Vaartjes rated plaintiff's job

---

[1] The parties stipulated to the dismissal with prejudice of claims under the Delaware Discrimination in Employment Act ("DDEA") in Count II of the Complaint.  The Court dismissed those claims with prejudice by Order dated July 11, 2013.

[2] Undisputed facts are taken from Statement of Undisputed Facts in Support of Defendants' Motion for Summary Judgment [hereinafter Defs. Facts] and Plaintiff's Statement of Genuine Material Disputed Facts in Opposition to Defendants' Motion for Summary Judgment [hereinafter Pl. Facts].

performance below expectations on his 2000 year-end review. *Id.* ¶ 19. Plaintiff asserts that the rating reflected the way store remodeling was incorporated into his sales and profits targets. Pl. Facts ¶ 19. Plaintiff received his normal salary and bonus for the year. *Id.*

In 2003, plaintiff was transferred to the Acme store in Ogletown, Delaware. Defs. Facts ¶ 9. Plaintiff was rated below expectations on his 2004 mid-year review. *Id.* ¶ 23. The significance of the 2004 mid-year review is disputed; plaintiff claims that Acme's policy is to ignore such evaluations when an employee receives meets or exceeds expectations on a year-end review. Pl. Facts ¶ 23. From 2000–2006, plaintiff met expectations on all his year-end reviews, including his 2004 year-end review. *Id.* ¶¶ 23–24.

In April 2006, Kent England became plaintiff's District Manager and supervisor. Defs. Facts ¶ 14. Plaintiff claims that England noted, on an early walkthrough of plaintiff's store, that he was five years younger than plaintiff and already a District Manager. Pl. Facts ¶ 46. Upon finding a problem with a store display, England allegedly said "with all your years of experience, I would expect that to be much better looking." *Id.* Four months after becoming plaintiff's supervisor, England rated plaintiff's performance below expectations in plaintiff's 2006 mid-year review. Defs. Facts ¶ 25. The basis and fairness of the 2006 mid-year review is disputed by plaintiff, Pl. Facts ¶ 26, and England ultimately stated plaintiff met expectations in plaintiff's 2006 year-end review. *Id.* ¶ 28.

On January 15, 2008, England wrote a Letter of Concern to plaintiff, enumerating several allegedly continuing violations of store policy. Defs. Facts ¶ 29. England then rated plaintiff below expectation on both his 2008 year-end review and 2009 mid-year review. Defs. Facts ¶¶ 30–31. Plaintiff was placed on a Performance Improvement Plan ("PIP") after both such reviews. *Id.* ¶¶ 32–33. In early 2009, England and other supervisory employees engaged in a

series of inspections — escalating in frequency — during which they documented alleged instances of poor performance and violations of company policy. Defs. Facts ¶¶ 33–39. Plaintiff disputes the factual basis and fairness of the Letter of Concern, the evaluations, the PIPs, and the reports. Pl. Facts ¶¶ 29, 30–32, 33–39. On April 30, 2009, England rated plaintiff below expectation in his 2009 year-end review. Defs. Facts ¶ 40. Plaintiff was terminated on May 2, 2009. *Id.* ¶ 41.

At the time of plaintiff's termination, England supervised nine store directors older than plaintiff. Defs. Acme Markets' and Supervalu's Mot. for Summ. J. Ex. A ¶ 10 [hereinafter Defs. Mot.]. In 2008–2009, when England rated plaintiff below expectations, all nine of the older store directors managed by England received meets or exceeds expectations on their year-end reviews. *Id.* Ex. A ¶ 11. By 2011, five of those employees had retired and one had been placed on disability leave. Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. Ex. 63, 64 [hereinafter Pl. Mem.].

## III.  LEGAL STANDARD

A court should grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d

3

Cir. 2007). The party opposing the motion, however, cannot "rely merely upon bare assertions, conclusory allegations or suspicions" to support a claim. *Fireman's Ins. Co. of Newark, N.J. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). The party asserting a fact "must support the assertion by . . . citing to particular parts of material in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

## IV.   DISCUSSION

The ADEA prohibits age discrimination in employment against any employee over the age of forty. 29 U.S.C. §§ 623(a)(1), 631(a). ADEA claims are subject to the three-prong burden-shifting analysis originally set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108 (3d Cir. 1997). Plaintiff bears the burden of establishing a prima facie case of discrimination. *See McDonnell Douglas*, 411 U.S. at 802. If plaintiff establishes a prima facie case, the burden shifts to the defendant employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* This burden is one of production, not persuasion. *Smith v. City of Allentown*, 589 F.3d 684, 690 (3d Cir. 2009). If defendant offers a legitimate nondiscriminatory reason, in order to survive summary judgment, plaintiff must submit evidence "to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.* Ultimately, plaintiff bears the burden of persuading the trier of fact that the defendant intentionally discriminated against plaintiff. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 799 n.10 (3d Cir. 2003).

Defendants argue that plaintiff fails (a) to establish a prima facie case and (b) to raise a genuine dispute of material fact as to pretext. The Court addresses each argument in turn.

### a.   Prima Facie Case

A plaintiff makes out a prima facie case of age discrimination under the ADEA by

showing: (1) that he is over forty; (2) that he is qualified for the position in question; (3) that he suffered an adverse employment decision; and (4) that he was replaced by a sufficiently younger person to permit an inference of age discrimination. *Smith*, 589 F.3d at 689. Defendants argue that plaintiff cannot establish the fourth element because an employee older than plaintiff ultimately was hired for his position. The Court rejects this argument. The evidence establishes that plaintiff initially was replaced by an employee ten years his junior. Defs. Facts ¶ 44. That employee left for another position after approximately nine months and was replaced by an employee four years younger than plaintiff. Pl. Mem. Ex. 63; Def. Mot. Ex. A. That employee was transferred to a different store after approximately one year and was replaced by the older employee. Def. Mot. Ex. A. The Court concludes that the ten-year age difference between plaintiff and his immediate, albeit temporary, replacement is sufficient to establish the fourth prong of plaintiff's prima facie case. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 729–30 (3d Cir. 1995) (holding that a ten-year age difference between a discharged employee and his or her temporary replacement establishes prima facie case).

      **b.   Pretext**

At the third step of the *McDonnell Douglas* framework, plaintiff must submit evidence that the employer's proffered legitimate, nondiscriminatory reason for the adverse employment action is pretext for discrimination. *Tex. Dep't Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981). To establish pretext, a plaintiff must present "some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Under the first method of proving pretext, plaintiff must "demonstrate

such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller*, 130 F.3d at 1109 (quoting *Fuentes*, 32 F.3d at 765).

Defendants argue that plaintiff cannot show pretext for three reasons: (1) plaintiff received one year-end and one mid-year review rating him below expectations before England became his manager; (2) England documented numerous alleged deficiencies in plaintiff's job performance; and (3) all nine store directors older than plaintiff who were supervised by England met expectations on performance reviews in 2008 and 2009, when England rated plaintiff below expectations.

Plaintiff vigorously disputes each argument. Plaintiff claims that Acme did not rate him below expectations on his 2000 year-end review for poor performance; rather, he claims that review was based on the fact that store remodeling costs were incorporated without adjustment into his sales numbers. Pl. Facts ¶ 19. On this point, plaintiff cites his salary increase and bonus in 2000 as evidence that his performance was satisfactory. *Id.* Plaintiff also argues that Acme, as a policy, ignores below expectations ratings on mid-year reviews when the employee is rated meets or exceeds expectations at the end of the year, as plaintiff was in 2004 and 2006. *Id.* ¶ 22–23.

As to England's evaluations of plaintiff in 2008 and 2009, plaintiff claims that they are based on factual misstatements, exaggerations, and heightened scrutiny to create a pretextual case to support plaintiff's termination. Plaintiff sets out in the record, in painstaking detail, the basis for his objections to the reviews and reports compiled in 2008 and 2009. Among other evidence, plaintiff points to stock options he received on June 5, 2008, two days before England

rated him below expectations on a year-end review. In a letter to plaintiff, the President of Acme stated that stock options were given to "a select group of associates who play a significant role in the long-term success of our company." Pl. Mem. Ex. 23. Although many of the facts are disputed, plaintiff also claims that England set his sales and profit numbers at an unrealistically high level to build a case supporting plaintiff's termination. In support of this argument, plaintiff points to two pieces of evidence: (1) younger employees missed sales and profit targets but England rated them more highly than plaintiff, Pl. Mem. at 24; and (2) by 2011, two years after plaintiff's termination, sales numbers at plaintiff's store were reduced by almost five million dollars and expected profits were reduced by one million dollars. Pl. Mem. Ex. 67.

Finally, regarding the store directors older than plaintiff who were managed by England, plaintiff claims that England (1) had no reason to discriminate against them because they were on the cusp of retirement or (2) forced them into retirement. In support of this argument, plaintiff notes that, of the nine store directors older than plaintiff, one was placed on disability leave and five retired shortly after plaintiff was terminated. Pl. Mem. Ex. 63, 64. Further, although the facts surrounding their terminations are disputed, plaintiff presented evidence of three other store directors over the age of fifty who were terminated by England before 2011. *Id.*

Given the conflicting declarations and records surrounding the circumstances of plaintiff's termination, the Court concludes that a reasonable factfinder could rationally find that defendants' proffered nondiscriminatory reason for terminating plaintiff was unworthy of credence. Thus, defendants' Motion for Summary Judgment on the issue of pretext is denied.

## V. CONCLUSION

For the foregoing reasons, the Court denies defendants' Motion for Summary Judgment. An appropriate order follows.